IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

RECEIVED
DEC 27 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel. )
MARCOS RAMIREZ, B-54859 )
_____ )
(Full name and prison number) )
(Include name under which convicted) )
 )
PETITIONER )
 )
vs. )
 )
MR. DONALD HULICK, Warden, )
_____ )
(Warden, Superintendent, or authorized )
person having custody of petitioner) )
 )
RESPONDENT, and )
 )
(Fill in the following blank only if judgment )
attacked imposes a sentence to commence in the )
future) )
 )
ATTORNEY GENERAL OF THE STATE OF )
 )
LISA MADIGAN )
_____ )
(State where judgment entered) )

04C 8310

CASE NO: _____
(Supplied by Clerk of this Court)

JUDGE DER-YEGHIAYAN

MAGISTRATE SIDNEY I. SCHENKIER

DOCKETED
DEC 29 2004

Case Number of State Court Conviction:

No.: 99-CR-23836-01

PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Circuit Court Cook County, First Judicial Circuit, 2650 South California Ave., Room 526; Chicago, IL 60608

2. Date of judgment of conviction: December 4, 2001

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known) aggravated battery with firearm, No.: 99-CR-23836-01

4. Sentence(s) imposed: fifteen (15) years

5. What was your plea? (Check one)   (A) Not guilty    (XX)
                                       (B) Guilty       ( )
                                       (C) Nolo contendere ( )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

## PART I -- TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one): Jury ( ) Judge only (XX)

2. Did you testify at trial? YES ( ) NO (XX)

3. Did you appeal from the conviction or the sentence imposed? YES (XX) NO ( )

   (A) If you appealed, give the

   (1) Name of court: First Judicial District

   (2) Result: Affirmed

   (3) Date of ruling: September 30, 2003

   (4) Issues raised: Insufficient evidence to prove that Petitioner fired the weapon that injured the victim, Edwin Cardona, contrary to Jackson v. Virginia, 61 L.Ed. 2d 560 (1979).

   (B) If you did not appeal, explain briefly why not:
   Does not apply

4. Did you appeal, or seek leave to appeal, to the highest state court? YES (XX) NO ( )

   (A) If yes, give the

   (1) Result: Affirmed

   (2) Date of ruling: November 24, 2004

   (3) Issues raised: Lack of evidence to support conviction, as described above.

   (B) If no, why not: DNA

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No (X)

   If yes, give (A) date of petition: DNA (B) date *certiorari* was denied: _____

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (XX)   NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary)

   A. Name of court: Circuit Court Cook County,

   B. Date of filing: August 19, 2004

   C. Issues raised: Ineffective assistance of trial counsel; and denial of right to fair sentencing hearing, in violation of his rights under the Sixth and Fourteenth Amendments, and right to Fair Trial.

   D. Did you receive an evidentiary hearing on your petition?   YES (XX)   NO ( )

   E. What was the court's ruling? denial

   F. Date of court's ruling: September 28, 2004

   G. Did you appeal from the ruling on your petition?   YES (XX)   NO ( )

   H. (a) If yes,   (1) what was the result? pending

               (2) date of decision: DNA

     (b) If no, explain briefly why not: DNA

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES ( )   NO (XX)

     (a) If yes,   (1) what was the result? DNA

               (2) date of decision: DNA

     (b) If no, explain briefly why not: Pending before intermediate appellate court

2. With respect to this conviction or sentence, have you filed a petition in a state court using any other form of  conviction procedure, such as *coram nobis* or habeas corpus?   YES (xx)   NO ( )

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

   1. Nature of proceeding            DNA
   2. Date petition filed              DNA
   3. Ruling on the petition           DNA
   3. Date of ruling                   DNA
   4. If you appealed, what was
      the ruling on appeal?            DNA
   5. Date of ruling on appeal         DNA
   6. If there was a further appeal,
      what was the ruling ?            DNA
   7. Date of ruling on appeal         DNA

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in federal c
   YES (X)   NO ( )

   A. If yes, give name of court, case title and case number:   DNA

   B. Did the court rule on your petition? If so, state

      (1) Ruling:   DNA

      (2) Date:     DNA

4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PEN IN ANY COURT, OTHER THAN THIS PETITION?

YES (XX)   NO ( )

If yes, explain:   AN APPEAL OF COLLATERAL PLEADING PURSUANT TO 725 ILCS 5/122-2.1(West2004)

## PART III – PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one _Petitioner is being deprived his right to fair trial where the_
Supporting facts (tell your story briefly without citing cases or law):
state court proceedings resulted in discretionary judgments contrary to Jackson v.
Virginia, 61 L.Ed. 2d 560 (1979), in violation of Petitioner's right to due process
under the Sixth and fourteenth amendment following bench trial and judgment for
aggravated battery with a firearm where evidence was insufficient to warrant such
findings. (See memorandum of law, and argument, for more details, hereto attached);
(See Exhibit I, hereto appellate court opinion: People v. Ramirez, 1-01-4510(September 3
2003)

(B) Ground two _Petitioner is being denied his Fifth, Sixth and Fourteenth amendment_
Supporting facts:
rights following defense counsel, Joel A. Whitehouse, numerous acts and omissions, as
followed: (1) failure to conduct an investigation and interview of Alexjandro Forres and
David Padilla (including failure to call each witness); (2) failure to file pretrial
motions, including motion to quash arrest and suppress evidence; (3) failure to advance
defense and present evidence beyond "stipulation;" (4) failure to object to state
prosecutor's admission of testimony to the original reports by Officer Paul Malachsen
when no report existed; (5) failure to file motion to suppress identification; (6) failu

-5-

to object to People's Exhibit(s) arbitrarily introduced into evidence; (7) failure to present evidence that supported his opening statement, in violation of his right to tenets enunciated under Strickland v. Washington, 80 L. Ed 2d 674 (1984). (See memorandum of law for further details, and argument)

(C) Ground Three  Trial courts summary dismissal of post conviction petition
Supporting facts: resulted in an unreasonable application of law, in light of supporting affidavits and was contrary to United States Supreme Court holding under Strickland v. Washington, 80 L.Ed. 2d 674 (1984), in violation of Petitioner's right to counsel, fair trial and due process of law. (See memorandum of law, for further details, and argument, hereto attached).

2  Have all grounds raised in this petition been presented to the highest court having jurisdiction?
   YES ( )   NO (X)

3. If you answered "NO" to question (16), state briefly what grounds were not so presented and why not:
   Grounds Two and Three are pending before the State Appellate Court following denial of collateral pleadings.

-6-

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judg attacked herein:

(A) At preliminary hearing    unknown

(B) At arraignment and plea    unknown

(C) At trial    Joel A. Whitehouse

(D) At sentencing    Joel A. Whitehouse

(E) On appeal    Public Defender

(F) In any post-conviction proceeding    Acted Pro Se

(G) Other (state):    DNA

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )    NO (xx)

Name and location of the court which imposed the sentence:    DNA

Date and length of sentence to be served in the future    DNA

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proce

Signed on: _____      _____
               (Date)                           Signature of attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.

*[signature]*
(Signature of petitioner)
Mr. Marcos Ramirez, B-54859
(I.D. Number)
P.O. Box 1700
(Address)
Galesburg, IL 61401

NOTICE
The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

(Exhibit 4)

FOURTH DIVISION
September 30, 2003

No. 1-01-4510

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | |
| v. | No. 99 CR 23836 |
| MARCOS RAMIREZ, | Honorable Henry R. Simmons, Jr. |
| Defendant-Appellant. | Judge Presiding. |

O R D E R

Following a bench trial, defendant Marcos Ramirez was convicted of aggravated battery with a firearm and sentenced to 15 years in prison. Defendant contends on appeal that he was not proven guilty beyond a reasonable doubt because the State failed to prove that he fired the weapon that injured the victim, Edwin Cardona.

Defendant's conviction arose from a shooting that occurred on October 9, 1999, outside of the residence located at 2452 North Tripp in Chicago. At trial, Edwin Cardona testified that on that date he was visiting and drinking beer with his cousins, Richard Cardona and Pedro Cardona. Edwin testified that sometime after 3 a.m., a van traveling north on Tripp stopped in front of the home where Edwin and his cousins were "hanging out." The driver of that van fired seven or eight shots in the direction of Edwin, Richard and Pedro, who took cover on the ground once the

1-01-4510

shooting began. After the shooting stopped for a moment, Edwin stood up and was thereafter shot in the buttocks. Edwin testified that when he was shot, the van was 10 to 25 feet from him. On cross-examination, Edwin stated that it was a foggy night, and that he did not see the person who was driving the van. The van was blue and gray with silver or gray stripes on the sides.

Pedro Cardona testified that at the time in question, a gray van with blue stripes appeared in front of the house where he was standing. Pedro testified he saw the driver of the van hold a gun out the window with his right hand over his left hand. Pedro described the driver as wearing a black shirt with a blue "05" on the sleeve. After Edwin was shot, Pedro and Richard ran into the house to tell Richard's mother to call an ambulance. Pedro and Richard then got into a car and followed the van down Tripp to Fletcher and Cicero. Pedro testified it took them "[l]ess than a minute" to get into the car and start following the van.

At Fletcher and Cicero, Pedro saw two individuals exit the van and saw defendant, who was wearing a shirt with "05" on his sleeve, standing in front of the van. Pedro testified that he and Richard did not say anything to the men at Fletcher and Cicero; instead they returned to the scene of the shooting to wait for the police. Pedro, Richard, and another individual named Mark thereafter returned to Fletcher and Cicero with the

1-01-4510

police. Defendant was still at Fletcher and Cicero and was still wearing a shirt with "05" on the sleeve when the police arrived.

On cross-examination, Pedro testified that it was very foggy that night, that he had seen many shirts with the number "05" on them, and that these shirts came in a variety of colors. Pedro also testified that he told the police that the driver was a male who wore a shirt with blue letters on it. At trial, Pedro identified the shirt that defendant wore that night and acknowledged that the "05" lettering was actually white. Pedro also stated that he did not give the police any other information about the driver, such as his height, physical features or age.

Officer Orlando Sanchez testified that he was called to the scene of the shooting and accompanied Pedro and Richard to Fletcher and Cicero. Defendant was there with three other individuals and was wearing a jersey with the number "05" on it. Officer Sanchez arrested all four men and searched the van. In conducting his search of the van, Officer Sanchez saw a shell casing fall from the driver's side door. Another casing was found near the van's rear passenger side.

On cross-examination, Officer Sanchez testified that after he arrested defendant and the three other men, he searched them for weapons, but found none. The surrounding area was also searched for a gun, but no gun was recovered. Officer Sanchez observed Officer Malachesen, an evidence technician, take

- 3 -

1-01-4510

photographs of the van but did not see him dust the van for fingerprints. A bottle of rum and a baseball bat which were found at the scene were not processed by Officer Malachesen.

Officer Malachesen testified that he was called to 2452 North Tripp on October 9, 1999 to process a crime scene. Officer Malachesen testified that he recovered five shell casings from the area that came from a .9 millimeter weapon. The parties later stipulated that the testimony of Kurt Zielinski, a ballistics and firearm expert, would show that the five casings found at the scene of the shooting were fired from the same weapon as the two casings found at the scene of defendant's arrest. Officer Malachesen further testified that he dusted the inside of the van for fingerprints, but that the report he made of that investigation was lost. Officer Malachesen testified he created a duplicate report from memory at a later date, but dated the duplicate report with the date of the original, lost report. Officer Malachesen testified that he did not take any fingerprint lifts from the van. He also testified that he did not inventory the rum bottle or the baseball bat found at the scene.

Officer Mander, a forensic investigator for the Chicago Police Department testified that about five hours after the shooting, he performed gunshot residue tests on defendant and the three other men arrested with him. On cross-examination Officer Mander testified that when he arrived at the police station,

- 4 -

1-01-4510

defendant and the other three detainees were held in the same interrogation room and were not handcuffed. Officer Mander further testified that gunshot residue is transferable, and that it can be transferred by shaking hands. Also, it is possible to take gunshot residue off of a shirt but he was not instructed to do so in this case.

As its final witness, the State called Robert Berk, a forensic analyst who testified as an expert in the area of gunshot residue tests. Berk testified that, in his opinion, the right palm, left back and left palm of the defendant's hands tested positive for gunshot residue. Berk concluded that this indicated the defendant had "either handled, fired or was in close proximity to a weapon when it was discharged."

On cross-examination, Berk testified that gunshot residue tests do not test whether or not the individual actually fired a gun, but rather if they were exposed to gunshot residue. Berk stated that another individual arrested with the defendant, Mr. Torres, also tested positive for gunshot residue. A third individual's test showed an elevated level of one of the trace elements of a gunshot residue test but not enough to indicate a positive result. Gunshot residue also remains on areas until physically removed. In Berk's opinion it was unlikely that in this case the suspects could cross contaminate each other with gunshot residue. Berk concluded that "[a] secondary

- 5 -

1-01-4510

contamination is so unlikely that I don't believe that it could occur."

Based on the above evidence, the trial judge found defendant guilty of aggravated battery with a firearm and sentenced him to 15 years in prison.

Defendant contends that the evidence presented at trial was insufficient to prove him guilty beyond a reasonable doubt of aggravated battery with a firearm. When a defendant challenges the sufficiency of the evidence, the issue is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of the elements of the crime charged beyond a reasonable doubt. People v. Tenney, 205 Ill. 2d 411, 427 (2002); People v. Cox, 195 Ill. 2d 378, 387 (2001). This court will not retry a defendant when reviewing a conviction; rather, the findings made by the trier of fact will be given great deference. People v. Smith, 185 Ill. 2d 532, 541 (1999); People v. Edmonds, 325 Ill. App. 3d 439, 446 (2001). Therefore, a conviction "will not be overturned unless it is so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt." People v. Ortiz, 196 Ill. 2d 236, 259 (2001); People v. Brown, 169 Ill. 2d 132, 152 (1996).

To find the defendant guilty of aggravated battery with a firearm, the State must prove beyond a reasonable doubt that the

- 6 -

1-01-4510

defendant, while committing a battery, "knowingly or intentionally by means of the discharging of a firearm" caused injury to another. 720 ILCS 5/12-4.2(a)(1) (West 2000).

On appeal, defendant argues that the State failed to (1) link him to the firearm used to shoot Edwin Cardona (2) prove that defendant fired the gun and (3) link defendant to the van searched at Fletcher and Cicero. Defendant also challenges the reliability of the identification made by Pedro Cardona. We reject these arguments in turn.

First, defendant's argument that the State failed to link him to the firearm used to shoot Edwin Cardona lacks merit. Pedro Cardona testified that the shooter was the driver of the van, and that he wore a dark shirt with "05" lettering on it, a description Pedro gave to the police. Pedro also testified that he followed the van to Fletcher and Cicero where he saw a man wearing a dark shirt with "05" lettering outside of the van. Pedro identified this man as the shooter.

Further, shell casings were found outside of the driver and passenger sides of the van at Fletcher and Cicero, as well as at the scene of the shooting near 2452 North Tripp. The stipulated expert testimony of Kurt Zielinski established that the casings found at Fletcher and Cicero were fired from the same weapon as those found at the Tripp location. Finally, expert testimony from Robert Berk established defendant's right palm, left back

1-01-4510

hand and left palm tested positive for gunshot residue, indicating that the defendant "had either handled, fired or was in close proximity to a weapon when it was discharged." In light of the above, there was sufficient evidence to link defendant to the shooting even though the gun was never recovered and the shell casings were not tested for fingerprints.

Defendant next argues that the State's evidence was insufficient because (1) the gunshot residue test performed can only establish that a person has been exposed to residue, not that he or she has fired a weapon, (2) the State failed to provide sufficient evidence to show the gun defendant was exposed to was that used in the shooting, and (3) gunshot residue may be transferred from one person to another. These arguments similarly fail.

As stated above, expert testimony from Robert Berk established that although gunshot residue is transferable from person to person, or item to person, the possibility that defendant was contaminated in that manner was so unlikely that the expert did not believe it was possible. Certainly the trial judge was within his discretion to accept this testimony and conclude that defendant was not contaminated by one of the others arrested simply by being placed with them in a squad car and interrogation room. The fact that traces of gunshot residue were found on defendant's hand in a manner that corresponded to

- 8 -

1-01-4510

Pedro's testimony of the position of the driver's hands when the gun was fired supports the trial court's conclusions.

Defendant next argues that his conviction cannot stand because the State failed to produce sufficient evidence linking him to the van. This argument also fails. Defendant points out that no fingerprint evidence was presented linking him to the van. Testimony was presented showing that the report made by the evidence technician, Officer Malachesen, was lost. Though this may be indicative of sloppy police work, given the fact that Pedro identified defendant as the shooter and in light of other facts discussed above, we cannot say that the trial judge erred in finding the State's evidence linking defendant to the van sufficient.

Finally, defendant challenges the sufficiency of the description Pedro Cardona gave to police. Defendant argues that because the shooting occurred quickly on a dark and foggy night, and because Pedro had consumed two or three beers, Pedro's identification of defendant as the shooter was unreliable. Defendant notes that Pedro did not give the police any physical description of the shooter other than that the shooter wore a dark shirt with a blue "05" on it. Defendant relies heavily on the fact that when he was apprehended at the Fletcher and Cicero scene, his shirt had white, not blue, "05" lettering on it. Defendant relies on People v. Hughes, 59 Ill. App. 3d 860 (1978)

- 9 -

1-01-4510

and People v. Versher, 52 Ill. App. 3d 148 (1977) to argue that the identification of defendant's clothing is insufficient to prove his guilt. This reliance, however, is misplaced.

In Hughes, the court found that the identification given by a complaining witness of her attackers was insufficient to prove the defendant's guilt. In that case, the witness did not see the attackers' faces. The witness testified that she believed two men she had seen 5 to 10 minutes before her attack were her attackers. She described one as wearing "a beige *** Super Fly hat, a beige long-sleeved jacket, a dark brown shirt and beige slacks." Hughes, 59 Ill. App. 3d at 861. Her description of the other attacker consisted of "a blue jean jacket, dark blue shirt, blue jeans and a navy wool hat." Hughes, 59 Ill. App. 3d at 861. The court in Hughes found the witness' description of her attackers, after observing only their backs from 500 yards was insufficient to prove the defendant's guilt. The court noted that "a conviction which is based on such doubtful and groundless identification, *absent other corroborating evidence*, is not sustainable upon review." Hughes, 59 Ill. App. 3d at 862 (emphasis added). In this case, however, there is other corroborating evidence, namely the matching shell casings found at the scene of the arrest and the scene of the shooting, as well as the positive results of the gunshot residue tests performed on defendant's hands.

- 10 -

1-01-4510

People v. Versher fares no better for defendant. In Versher, the complaining witness described her attacker as being between 5 feet 5 inches and 5 feet 7 inches tall, weighing 140 to 150 pounds, wearing a black leather jacket and carrying a paper bag. She did not see his face. This court held that the victim's identification of the defendant based only on his wearing a black leather jacket was insufficient. The case at bar, however, can be distinguished from Versher on the basis of the specificity of the description given to the police. Although Pedro did not see the shooter's face, he did see his sleeve with the "05" writing on it. Defendant was apprehended at Fletcher and Cicero wearing a shirt with "05" lettering. Defendant notes that Pedro told police the lettering was blue, whereas the lettering on defendant's shirt was in fact white. This is at best a minor discrepancy, and the trial court acted within its authority in resolving it in favor of the State.

Viewing the evidence in the light most favorable to the prosecution, as we must when faced with a challenge to the sufficiency of the evidence, we cannot say that no rational trier of fact could find the essential elements of aggravated battery with a firearm. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GREIMAN, J., with QUINN, P.J., and THEIS, J., CONCURRING.